UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANET M. LOMBARDI-PERWERTON,
Individually and as Next Friend of PAUL
LOMBARDI,

        Plaintiffs,

v.                                                   Civil Case No. 19-11870
                                                  Honorable Linda V. Parker

LONE PINE ASSOCIATION, INC.,
BRYAN SHAVER, and JOE LOCKWOOD,

        Defendants.
_____/

**<u>OPINION AND ORDER (1) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, (ECF NO. 10), AND (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 16)</u>**

       Plaintiff Paul Lombardi ("Mr. Lombardi") owned a boat and was assigned a boat deck ("Boat Slip") by Defendant Lone Pine Association, Inc. ("LPA"). Defendants LPA, Bryan Shaver, and Joe Lockwood found that Mr. Lombardi violated the Boat Regulations by not using the Boat Slip for some years and allowing his adult child, Janet M. Lombardi-Perwerton ("Ms. Lombardi"), to use it instead. As a result, Defendants revoked the Boat Slip assignment.

       Plaintiffs filed this lawsuit, (i) seeking a declaration that they own the Boat Slip in fee (Count I); (ii) seeking a declaration that they hold a prescriptive easement to the Boat Slip or a license coupled with an interest (Count II); (iii)

1

seeking injunctive relief (Count III); (iv) alleging breach of governing documents (Count IV); (v) alleging violation of the Elliot-Larsen Civil Rights Act ("ELCRA") (Count V); (vi) alleging violation of the Americans with Disabilities Act ("ADA") (Count VI); and (vii) alleging breach of fiduciary duty (Count VII). (ECF No. 1.)

Presently before the Court is Defendants' Motion for Summary Judgment, filed on December 30, 2019, (ECF No. 16), and Plaintiffs' Motion for Preliminary Injunction, filed on July 30, 2019, (ECF No. 10). The motions are fully briefed. (ECF Nos. 14, 15, 19, 21.) Finding the legal arguments in the briefs sufficient, the Court dispensed with oral argument pursuant to L.R. 7.1(f)(2).

For the reasons stated below, the Court grants Defendants' Motion for Summary Judgment as to Counts I, II, IV, V, VI, and VII. Count III: Injunctive Relief "is not a cause of action, it is a remedy." *Thompson v. JPMorgan Chase Bank, N.A.*, 563 Fed. Appx. 440, 442 n.1 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 494 (2014), *reh'g denied*, 135 S. Ct. 1171 (2015). The Court, therefore, grants summary judgment as to this claim. In addition, the Court denies as moot Plaintiffs' Motion for Preliminary Injunction.

**FACTUAL BACKGROUND**

In 1953, the LPA was created to manage a tract of land located on Walnut Lake for the benefit of its members. (ECF No. 16-9 at Pg. ID 309.) At the time of the events in question, Defendant Shaver served as Board Member and President of

the LPA and Defendant Lockwood served as Board Member and Boat Chairman. (ECF No. 16-5 at Pg. ID 298.)

Article IV, Section 6 of the LPA's By-Laws of Incorporation ("By-Laws") states, in relevant part:

> [I]t is expressly provided that the Board of Directors shall have the following powers . . .
>
> a) Management and control of . . . all property, real and personal of the corporation. . . .
>
> i) To provide rules and regulations for the management, control and maintenance of its premises for the entertainment, comfort, or convenience of said corporation and its members; and,
>
> j) Regulate and determine the persons and number thereof which may be entertained or cared for upon its premises . . . .

(ECF No. 16-2 at Pg. ID 284.)

One set of "rules and regulations" promulgated by the Board of Directors include the Boat Regulations. Per the Boat Regulations, LPA members who own boats are eligible to receive a dock space, which the LPA assigns on a first come-first serve basis. (ECF No. 16-4 at Pg. ID 291.) The Boat Regulations provide, in relevant part:

> 13) If your dock space will be unused for 30 days or more after the time docks are installed, it is your responsibility to notify the boat chair. When you have notified the boat chair, the dock space in question may be temporarily rented to another member. . . . ***Please Note: If your space is not used by you, and you have not notified the boat chair, your dock privileges may be lost!*** . . .

3

19) If your boat is identified as a low or no use boat, through lack of siginin [*sic*] and beach staff observation you may lose your boat well privileges. . . .

21) Beach membership is transferable upon sale of your home, but boat well assignment is not. Please notify the boat chair ASAP if you are not renewing your dock space to provide the next person on the waiting list time to purchase a boat. . . .

24) Please remember, boat dock privileges are for Association homeowners. Your boat must belong to you, be part of your household and be registered in your name, and not belong to adult children who have moved away, other relatives, or friends![] Your adult children may use your boat without you present, providing your insurance coverage includes them. If people other than current Association members are using boats at the beach, the owner of the boat may lose their boating rights. . . .

(ECF No. 16-4 at Pg. ID 292-93.)

In 1953, Mr. Lombardi acquired real estate in The Braes of Bloomfield Subdivision and, thus, was eligible to become a stockholder and member of the LPA. (ECF No. 19 at Pg. ID 350.) Mr. Lombardi became a member in or around 1955, (ECF No. 19-2), and was assigned the Boat Slip shortly thereafter, (ECF No. 19 at Pg. ID 350.) In the latest Boat Registration form, signed by Mr. Lombardi and dated in 2018, Mr. Lombardi "acknowledge[s] the responsibility to adhere to all beach and boating regulations." (ECF No. 16-3 at Pg. ID 289.)

In 2018, Defendants learned that Mr. Lombardi had not used the Boat slip "in years." (ECF No. 16 at Pg. ID 256.) Though it is unclear from the record the

precise number of years of nonuse, Defendant Shaver testified that, on April 20, 2019, Ms. Lombardi stated that Mr. Lombardi had used the Boat Slip one time in five years.  (ECF No. 16-5 at Pg. ID 297.)  About one week later, Mr. Lombardi confirmed the same.  (*Id.*)  Moreover, the parties do not dispute that Ms. Lombardi was using the Boat Slip and would bring her family along with her.  (ECF No. 19 at Pg. ID 361.)  Neither Ms. Lombardi nor her family members live with Mr. Lombardi.

In a letter dated April 22, 2018, Defendant Lockwood wrote to Mr. Lombardi, stating that the Boat Slip "[was] designed for members of the association," was being "misappropriated for use and will be discontinued immediately."  (ECF No. 19-3 at Pg. ID 378.)

## STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a reasonable jury could find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## APPLICABLE LAW & ANALYSIS

### Count I: Winding Up of Corporation Whose Term Has Expired
### (Declaratory Relief Re: Owning Boat Slip in Fee)[1]

Michigan Compiled Laws § 450.371, which the parties agree governs this issue, (ECF Nos. 16 at Pg. ID 269; 19 at Pg. ID 351), states:

> Notwithstanding any other provision of law, the term of existence of every domestic corporation heretofore incorporated or hereafter incorporating under any law of this state may be perpetual or may be for a limited period of time, as fixed by *its articles*, or *amendment thereto made before the expiration of its corporate term*, or *by a certificate of extension of its corporate term*, or *by a certificate of renewal of its corporate term*.

M.C.L. § 450.371 (emphasis added).

Plaintiffs note that Michigan Compiled Laws § 455.21 provides that:

> In case such corporation should for any reason be disolved [dissolved] or wound up by any court of competent jurisdiction, by reason of the termination of its charter or otherwise, each stockholder to whom a lot or lots have been assigned, allotted or confirmed, shall be entitled to receive the same in fee . . . .

M.C.L. § 455.21 (alteration in original).

LPA's Articles of Incorporation, which were signed and filed in 1953, state that "[t]he term of this corporation is fixed at thirty (30) years." (ECF No. 19-1 at

---

[1] Though Plaintiffs label Count I as "Winding Up of Corporation Whose Term Has Expired," based on Plaintiffs' briefs, the Court understands Plaintiffs seek a declaration that they own the Boat Slip in fee.

7

Pg. ID 373, 375.) Approximately 31 years later, in 1984, a Certificate of Renewal of Corporate Existence was filed on behalf of LPA. (ECF No. 16-9 at Pg. ID 319.)

Plaintiffs argue that at the moment LPA's term of existence expired, Mr. Lombardi received the Boat Slip in fee. (ECF No. 19 at Pg. ID 351-52.) Defendants seek summary judgment, arguing that Mr. Lombardi does not own the Boat Slip in fee because—among other things—the "[LPA] is in existence and in good standing per the State of Michigan." (ECF No. 16 at Pg. ID 268.)

Defendants are correct. Amendment to a domestic corporation's articles before the expiration of its corporate term is only one mechanism by which to fix a domestic corporation's term of existence. By the plain language of Michigan Compiled Laws § 450.371—language which Plaintiffs omit from their brief—a domestic corporation's term of existence may also be "fixed by . . . a certificate of renewal of its corporate term." (*See* ECF No. 19 at Pg. ID 351-52); M.C.L. § 450.371. Here, LPA's term of existence is limited to the period of time fixed by the Certificate of Renewal of Corporate Existence filed in 1984. According to the document, the corporate term is now "perpetual." (ECF No. 16-9 at Pg. ID 319.)

Notably, Michigan Compiled Laws § 450.371 states that a corporate term may be for a limited period of time as fixed by, among other things, (i) "amendment [to articles] *made before the expiration of its corporate term*," (ii) "certificate of extension of its corporate term," or (iii) "certificate of renewal of its

8

corporate term." The latter two methods are not modified by the phrase "made before the expiration of its corporate term." Accordingly, the fact that the Certificate of Renewal of Corporate Existence was filed after the expiration of LPA's corporate term is inapposite. *See Barnhart v. Thomas*, 540 U.S. 20, 21 (2003) ("[A] limiting clause or phrase should be read to modify only the noun or phrase that it immediately follows.").

In addition, Michigan Compiled Laws § 455.21 does not apply to this case because Plaintiffs would "be entitled to receive the [Boat Slip] in fee upon complying with such terms and conditions as may be imposed by the court having jurisdiction of the winding up of [the LPA]." M.C.L. § 455.21. Not only has no "court of competent jurisdiction" wound up the LPA, but the record is devoid of any showing that Plaintiffs have complied with any relevant "terms and conditions" imposed by such a court.

Accordingly, Plaintiffs are not entitled to receive the Boat Slip in fee and the Court grants Defendants' Motion for Summary Judgment as to Count I.

<u>Count II: Declaratory Relief</u>
<u>(Re: Prescriptive Easement and License Coupled with an Interest)</u>

As an alternative to Count I, Plaintiffs seek a declaration stating that Plaintiffs hold (i) a prescriptive easement in and to the Boat Slip or (ii) a license to the Boat Slip coupled with an interest. (ECF No. 19 at Pg. ID 347-48.)

9

*Do Plaintiffs Hold a Prescriptive Easement?*

"An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Higgins Lake Prop. Owners Ass'n v. Gerrish Twp.*, 662 N.W.2d 387, 411 (Mich Ct. App. 2003) (citations omitted). Notably, "the 15–year time period does not begin to run until the owner of the servient estate (in this case, defendants) has actual notice of the adverse use." *Affeldt v. Lake Court Beach Ass'n*, No. 315277, 2015 WL 405761, at *7 (Mich. Ct. App. Jan. 29, 2015) (citation omitted). "While actual notice 'may be determined by the character of the use,' the use must be 'so open, notorious, and hostile as to leave no doubt in the mind of the owner of the land that his rights are invaded.'" *Id.* (citation omitted). The plaintiff has the burden of establishing entitlement to a prescriptive easement by clear and cogent proof. *See Killips v. Mannisto*, 624 N.W.2d 224, 226 (Mich. Ct. App. 2001) (citations omitted).

Plaintiffs have not established entitlement to a prescriptive easement because Plaintiffs fail to point to specific material in the record supporting the assertion that Defendants had notice—for a period of 15 years—of the alleged adverse use by either Mr. Lombardi (by violating Rules 13, 19, or 24, or any other rule articulated in the By-Laws or Boat Regulation) or Ms. Lombardi (by using the Boat Slip as if she were an LPA member). *See Becker v. Thompson*, No. 262214, 2006 WL

1408417, at *3 (Mich. Ct. App. May 23, 2006) (finding no prescriptive easement where the defendants testified that they were unaware that plaintiff was claiming a right until the litigation began); (ECF No. 16 at Pg. ID 272-73.)

To the contrary, the record suggests that Defendants first became aware of Plaintiffs' alleged adverse use on or around June 2018. (ECF No. 16-6 at Pg. ID 300-01.) Plaintiffs nonetheless argue that they "openly used the Boa[t] Slip under a claim of right for over 60 years[,] [] [the] Defendants knew of the use and acquiesced to it," and "[t]he assumption of control and use were known to everyone in the community." (ECF No. 19 at Pg. ID 354.) These unsupported assertions do not suffice to defeat summary judgment. *See Gooden v. City of Memphis Police Dep't*, 67 Fed. Appx. 893, 895 (6th Cir. 2003) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence" and are not enough to defeat summary judgment).

*Do Plaintiffs Hold a License Coupled with an Interest?*

In the alternative, Plaintiffs argue that they hold a "license coupled with an interest." In *Forge v. Smith*, 580 N.W.2d 876, 883 (Mich. 1998), the Michigan Supreme Court described a "license coupled with an interest" as follows:

> A license grants permission to be on the land of the licensor without granting any permanent interest in the realty. While easements constitute an interest in real estate, licenses do not. . . . While licenses are generally revocable at will, a license coupled with an interest is not. However, a license coupled with an interest is a privilege "incidental to

11

the ownership of an interest in a chattel personal located on the land with respect to which the license exists."

Plaintiffs contend that, here, the boat is the chattel personal in which Plaintiffs hold an interest. (ECF No. 19 at Pg. ID 367.) Plaintiffs argue that Defendants gave them "the privilege . . . of placing [the] boat in the Boat Slip and gaining access to it, which is clearly related and incidental to entry for purposes of accessing a chattel on the Association's property." (*Id*. at Pg. ID 358.)

Plaintiffs reliance on the "license coupled with an interest" doctrine is misplaced because the doctrine does not apply to the facts at hand. Indeed, the idea that a licensee can turn a revocable license into an irrevocable one by *subsequently introducing* chattel is an odd notion.

Under the doctrine, the license to enter the land that contains the chattel to which the licensee holds an interest arises because the chattel is *already located on the land* or entering the land is *necessary* for the use of the chattel purchased by the licensee.

As the Michigan Supreme Court explained in *Nowlin Lumber Co. v. Wilson*:

> "[W]hen an interest is coupled with the license, . . ."[] as where one sells chattels situated upon his lands, and by express words authorizes him to enter and remove it; or where he gives the right to cut a tree or to dig ore in his mine, and remove it, such license becomes irrevocable after the tree is cut or the ore is dug, and the licensee may enter and remove such tree or ore without becoming a trespasser. But he could not, after revocation, continue to cut other trees or dig more ore.

12

78 N.W. 338, 340 (Mich. 1899) (citation omitted). In that case, the chattel at issue was located on the land at the time the license was conveyed to the licensee. Here, the boat was brought to the land only after the land's use had been authorized. *See also Wilson v. Davis*, 2011 WL 4424342, at *3 (Mich. Ct. App. Sept. 22, 2011) ("For example, a property owner may sell a car of coal that is *located on his property*. The buyer's privilege to enter the seller's property to remove the coal is a 'license coupled with an interest.'" (emphasis added)); *Forge*, 580 N.W.2d at 883 ("A license coupled with an interest is a privilege incidental to the ownership of an interest in a *chattel personal located on the land* with respect to which the license exists." (emphasis in original) (quoting Restatement (First) of Property § 513 cmt. f (1944))).

In addition, in *Clugston v. Joachim*, where the licensee argued that use of an adjoining parking lot was necessary to make the commercial building that he purchased beneficial to him, the Michigan Court of Appeals found that the licensee did not hold a license coupled with an interest because "he ha[d] not demonstrated an interest in a chattel personal located *on the disputed land*." 2001 WL 714803, at *2 (Mich. Ct. App. June 22, 2001) (unpublished) (emphasis added). As discussed above, here, the boat was not on the disputed land at the time Defendants conveyed the license. And just as the *Clugston* court found that "[u]se of the adjoining property [was] not a *necessary* incident to defendant's use of the realty that he

13

purchased," *id.* (emphasis added), here, use of the specific boat dock assigned to Mr. Lombardi is not a necessary incident to Plaintiffs' use of Mr. Lombardi's boat.

Because Plaintiffs do not hold a prescriptive easement or a license coupled with an interest, the Court grants summary judgment as to Count II.

### Count IV: Breach of Governing Documents

Defendants seek summary judgment as to Plaintiffs' Breach of Governing Documents claim, arguing that Defendants did not violate any governing documents. Rather, "[they] were enforcing the Rules and Regulations applicable to all members" as set forth in the governing documents. (ECF No. 16 at Pg. ID 263.)

"When validly promulgated, an entity's bylaws or similar governing instrument will constitute a binding contractual agreement between the entity and its members." *Colin v. Upton*, 881 N.W.2d 511 (Mich. Ct. App. 2015) (citing *Mayo v. Great Lakes Greyhound Lines*, 52 N.W.2d 665 (Mich. 1952) (providing that the members of a voluntary association are bound by the association's constitution and general laws)). As Plaintiffs concede, the By-Laws "give the Board of Directors the authority [] '[t]o provide rules and regulations for the management, control and maintenance of its premises for . . . its members.'" (ECF No. 19 at Pg. ID 360.) Because the parties do not dispute that the Boat Regulations

14

are instruments concerning the "management, control and maintenance of [LPA] premises," the By-Laws and Boat Regulations are binding contracts.

Plaintiffs argue that "revocation of Boat Slips is not authorized" by the LPA's Articles of Incorporation, By-Laws, or Boat Regulations. (*Id*. at Pg. ID 359.) However, Plaintiffs point to no specific provision or express term within any of these documents disallowing revocation of the Boat Slip. *Thill v. Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950, 955 (E.D. Mich. 2014) (finding that a breach of contract claim failed because "Plaintiff's allegations do not identify the specific terms of the contract allegedly breached"). Though Plaintiffs discuss at length how *they* did not violate the rules detailed in Paragraphs 13, 19, and 24 of the Boat Regulations (ECF No. 19 at Pg. ID 361-62), none of these arguments bring Plaintiffs closer to their obligation to show how *Defendants* violated a contractually imposed duty to not revoke the Boat Slip.

In what appears to be an attempt to salvage this claim, in their response brief, Plaintiffs argue for the first time that "LPA took Plaintiffs' Boat Slip [w]ithout [d]ue [p]rocess of [l]aw." (*Id*. at Pg. ID 362.) The Sixth Circuit, however, has explained that "a plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion." *Desparois v. Perrysburg Exempted Vill. Sch. Dist*., 455 F. App'x 659, 666 (6th Cir. 2012) (citations omitted).

15

Accordingly, the Court grants summary judgment as to Count IV.

### Counts V & VI: Violation of Elliott-Larsen Civil Rights Act & Violation of Americans with Disabilities Act

The ELCRA protects a person from age discrimination in the "terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection with a real estate transaction." M.C.L. § 37.2502(1)(b). The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.

Michigan courts have adapted the three-part *McDonnell Douglas* test to real estate transaction-related discrimination claims under the ELCRA and federal courts use the same test to analyze discrimination claims under the ADA. *See LN Real Estate, LLC v. Kingdom Living Church*, No. 333208, 2017 WL 5759708, at *8 (Mich. Ct. App. Nov. 28, 2017) (unpublished); *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015). Under the framework, "the plaintiff [must] first establish a *prima facie* case of discrimination. Then, in response, the defendant must offer a legitimate nondiscriminatory reason for the [] decision made. Finally, the plaintiff must show that the proffered reason is a pretext that masks

16

discrimination." *LN Real Estate*, 2017 WL 5759708, at *8 (internal quotation marks and citation omitted).

To demonstrate pretext for discrimination, Plaintiffs must show "by a preponderance of the evidence either (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the discharge, or (3) the proffered reason was insufficient to motivate discharge." *Giles v. Norman Noble, Inc.*, 88 F. App'x 890, 895 (6th Cir. 2004) (citation omitted). Notably, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (citation omitted). "[The] plaintiff must produce sufficient evidence from which the jury could 'reasonably reject [the defendant's] explanation' and infer that the defendants 'intentionally discriminated' against him." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (citing *St. Mary's*, 509 U.S. at 519).

In their summary judgment motion, Defendants point to an alleged legitimate, nondiscriminatory reason for their Boat Slip revocation decision—specifically, that Mr. Lombardi violated Paragraphs 13, 19, and/or 24 of the Boat Regulations. (ECF No. 16 at Pg. ID 259, 267.) In response, Plaintiffs argue—in sum—that they did not violate the Boat Regulations. (*See* ECF No. 19 at Pg. ID

368.) Critically, Plaintiffs' response does not overcome the burden of showing pretext as it concerns their age and disability discrimination claims.

Even if Defendants' interpretation of the Boat Regulations and subsequent decision were wrong or not prudent, Plaintiffs' single responsive argument as it concerns the age discrimination claim—"it seems clear that [the] impetus to revoke Mr. Lombardi's boat slip was the fact that he was too old to use [his] own boat," (*id.*)—is merely a conclusory allegation and does not satisfy the burden of coming forward with sufficient *evidence* that Defendants intentionally discriminated against Mr. Lombardi because of his age. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("[R]umors, conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law.") Considering that Plaintiffs proffer no argument or evidence regarding pretext concerning their disability discrimination claim, the strength of that claim fares worse.

Accordingly, the Court grants summary judgment as to Counts V and VI.

Count VII: Breach of Fiduciary Duty

In their Complaint, Plaintiffs allege that Defendants Shaver and Lockwood, "in their capacities as directors, owed a fiduciary duty to the LPA[] and all its stockholders/members . . . of good faith and loyalty, to exercise a degree of diligence, care and skill of an ordinarily prudent person in like position," and that

they "willfully failed to properly perform and observe their fiduciary duties." (ECF No. 1 at Pg. ID 10.)

Plaintiffs premise this claim on their age discrimination claim, arguing that "[r]evoking a shareholder's rights for no reason other than that he is old certainly fits within [the] exception" that permits breach of fiduciary claims for intentional infliction of harm on shareholders. (ECF No. 19 at Pg. ID 369-70.) Because Plaintiffs have not made out an age discrimination claim under Count V, the Court grants summary judgment as to this claim.

## CONCLUSION

For the reasons discussed above, the Court finds that no genuine issues of material fact exist as to any count.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 16), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 10), is **DENIED** as moot.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 31, 2020